# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ERMA MCMILLAN'S | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| DEPT. OF HUMAN SERVICE OF PENNSYLVANIA, CHILDREN AND YOUTH SERVICES OF DELAWARE COUNTY, CHILDREN AND YOUTH SERVICES OF MONTGOMERY COUNTY, CITY OF CHESTER and CITY OF NORRISTOWN | : | NO. 18-2080 |

## MEMORANDUM OPINION

**Savage, J.**                                                    **August 16, 2018**

Plaintiff Erma McMillan, proceeding *pro se*, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of her Fifth and Fourteenth Amendment due process rights, equal protection laws, including the Eighth Amendment equal protection clause, and the First and Fourteenth Amendment interference with the integral relationship clause. In her amended complaint, she alleges the City of Chester,[1] the City of Norristown, Children and Youth Services of Delaware County (DCCYS), Children and Youth Services of Montgomery County (MCCYS), and the Pennsylvania Department of Human Services (DHS) failed to intervene or assist in regaining custody of her two grandchildren. She also alleges they failed to comply with Pennsylvania's statutory notice and hearing requirements after the biological father of one of the children was

---

[1] In her Reply Memorandum, McMillan moved to voluntarily dismiss her claims against the City of Chester. *See* McMillan Reply to City of Chester Mot. to Dismiss (Doc. No. 23).

granted a protective custody order.² Further, McMillan claims DHS maintained unconstitutional policies that permitted its agents to refrain from intervening in retrieving her grandchildren and to refuse to communicate with her when the protective custody order was issued.

In moving to dismiss the complaint, the City of Chester and City of Norristown argue that McMillan has failed to allege any policy or custom or that she has suffered constitutional harm. DCCYS claims it is not a proper defendant because it is an agent of Delaware County. It also argues that McMillan has not alleged due process violations.

Neither MCCYS nor DHS have been served. Nevertheless, we shall consider the plaintiff's claims against them as if they had been served. If the court grants another defendant's motion to dismiss, the court may, on its own initiative, dismiss claims as to non-moving defendants if the claims against the non-moving defendants suffer from the same defects raised in the moving parties' motions. *Minnesota Lawyers Mut. Ins. Co. v. Ahrens*, 432 Fed. App'x 143, 148 (3d Cir. 2011) (quoting *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980) (stating that the court may *sua sponte* dismiss a claim as to non-moving defendants where the inadequacy of the claim is clear); *see also McPherson v. United States*, 392 Fed. App'x 938, 942–43 (3d Cir. 2010) (stating that *sua sponte* dismissal is appropriate when affirmative defense is clear from the face of the complaint). A claim against a non-moving party may be dismissed if the claims against all defendants are "integrally related" or where the non-moving defendants are

---

² McMillan makes references to individual DCCYS agents Karen Killson, Kim Greenburg, and Walter Spall (sometimes referred to as Walter Spallows), but does not name them as defendants. *See* Am. Compl. (Doc. No. 13) ¶¶ 42, 46–48 at ECF 13–14, 26–27 (Counts VI–VIII).

in a similar position to the moving defendants. *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993). Therefore, to the extent the deficiencies cited in DCCYS' motion to dismiss also apply to MCCYS and DHS, we shall review them.

Although we recognize McMillan's frustration in attempting to protect her grandchildren, we can find no basis for her federal claims. She is free to seek relief in the state courts. In the meantime, we must dismiss her claims in this case.

## Factual Background

The facts are garnered from the detailed amended complaint. In considering the motion to dismiss, we accept them as true and draw all reasonable inferences from them in favor of the plaintiff.

Erma McMillan is the grandmother and sole custodian of her two grandchildren, J.M.#1 and J.M.#2.[3] On March 8, 2018, J.M.#1's biological father, Ramone Berry, contacted McMillan, asking if he could spend time with both children.[4] With McMillan's consent, Berry took the children to his girlfriend's home in Norristown, Pennsylvania.[5] Soon thereafter, Berry began calling McMillan and demanding money for the children's outing, SNAP benefits,[6] and the children's dental and school records.[7] Though McMillan agreed to give Berry the requested money, she refused to give him the dental

---

[3] Am. Compl. ¶ 10 at ECF 3.

[4] *Id.*

[5] *Id.*

[6] SNAP, or the Supplemental National Assistance Program, offers nutrition assistance to low-income individuals. *See Supplemental Nutrition Assistance Program (SNAP)*, U.S. DEP'T OF AGRICULTURE, https://www.fns.usda.gov/snap/supplemental-nutrition-assistance-program-snap (last visited August 15, 2018).

[7] Am. Compl. ¶¶ 11–13 at ECF 3–4.

and school records.[8] Berry then informed McMillan that she would never see the children again.[9] Berry rejected pleas for return of the children.[10]

On March 28, 2018, McMillan went to the Norristown police to report that her grandchildren had been kidnapped.[11] When an officer asked Berry if he planned on returning the children, he responded no.[12] McMillan also reported to DCCYS that Berry was beating and intimidating the two children.[13]

After attempting to contact Berry over the next few days, McMillan finally spoke with J.M.#1 on the phone on April 1, 2018.[14] J.M.#1, who was crying, informed McMillan that he was "getting [his] butt beat" for "writing on the wall" and "pulling [his] wee wee out."[15] When McMillan asked where he learned that from, he exclaimed "from myself" and from "pop-pop."[16] Berry took the phone from J.M.#1 and told McMillan she would never see the children again.[17]

---

[8] *Id.*

[9] *Id.* ¶ 14 at ECF 4.

[10] *Id.* ¶ 15 at ECF 4.

[11] *Id.* ¶ 16 at ECF 4–5.

[12] *Id.*

[13] *Id.* ¶ 42 at ECF 13–14.

[14] *Id.* ¶¶ 17–18 at ECF 5–6.

[15] *Id.* ¶¶ 18–20 at ECF 5–6.

[16] *Id.* ¶¶ 21–22 at ECF 6. According to McMillan, "pop-pop" is a long-time family friend. *Id.* ¶ 50 at ECF 24–25.

[17] *Id.* ¶ 23 at ECF 6–7.

4

When McMillan contacted the Chester Police Department, they instructed her to go to the Norristown police.[18] When McMillan spoke with an officer at Norristown police headquarters that same day, she was told Chester County police had to intervene.[19] McMillan then lodged complaints with the Delaware County District Attorney's Office, the Federal Bureau of Investigation, and the National Center for Missing Children.[20] Though McMillan informed Children and Youth Services (CYS) of both Montgomery and Chester Counties of Berry's criminal history, drug use, and lack of employment, they did not act to retrieve the children.[21]

On April 17, 2018, McMillan returned to Norristown police headquarters where she was told that DCCYS informed the police not to release J.M.#1 and J.M.#2 to her.[22] Three days later, an officer with the Chester Police Department informed McMillan's attorney that Berry had a protective custody order placing custody of the children with him.[23]

On May 17, 2018, McMillan learned from Chester County police that Berry had lodged abuse allegations against her with DCCYS.[24] One month later, on June 17, 2018, Berry gave J.M.#1 and J.M.#2 to Patrick Pearson, a former boyfriend of

---

[18] *Id.* ¶¶ 24–25 at ECF 7. McMillan alleges she went to the Chester and Norristown Police Departments on March 29, 2018 (before the call), but seems to imply in her complaint that she spoke with the police officers after the phone call with Berry on April 1. *Id.* ¶¶ 24–26 at ECF 7–8.

[19] *Id.* ¶ 26 at ECF 8.

[20] *Id.* ¶¶ 27–29 at ECF 8–9.

[21] *Id.* ¶¶ 38–40 at ECF 12–13.

[22] *Id.* ¶ 32 at ECF 9.

[23] *Id.* ¶¶ 36–37 at ECF 11.

[24] *Id.* ¶¶ 49, 69 at ECF 27–28, 37.

McMillan's deceased daughter.[25] A custody hearing was scheduled in Delaware County for the following day. Berry did not appear, and Pearson delivered the children to McMillan at the courthouse.[26]

On June 27, 2018, DCCYS contacted Pearson at his home and place of employment, asking to see the children.[27] On June 28, 2018, DCCYS contacted McMillan to take the children from her.[28] DCCYS informed her that because there were allegations the children were not safe with her, they had to be removed.[29] When McMillan indicated she would "think on it," the DCCYS worker stated she would get an order to take J.M.#1 and J.M.#2 from her.[30] As of the date of the amended complaint, Berry has had possession of the children.[31]

## Standard of Review

A Rule 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint. In order to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads

---

[25] *Id.* ¶ 64 at ECF 35.

[26] *Id.* ¶ 65 at ECF 35.

[27] *Id.* ¶ 66 at ECF 35–36.

[28] *Id.* ¶¶ 67–68 at ECF 36.

[29] *Id.* ¶¶ 68–73 at ECF 36–38.

[30] *Id.* ¶¶ 74–75 at ECF 38–39.

[31] *Id.* ¶ 54 at ECF 28. McMillan states that Berry has "him and (J.M.#1)" in his possession. *Id.* We interpret "him" to mean J.M.#2.

6

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A conclusory recitation of the elements of a cause of action is not sufficient. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The plaintiff must allege facts necessary to make out each element. *Id.* (quoting *Twombly*, 550 U.S. at 563 n.8). In other words, the complaint must contain facts which, if proven later, support a conclusion that a cause of action can be established.

In considering a motion to dismiss under Rule 12(b)(6), we first separate the factual and legal elements of a claim, accepting the well-pleaded facts as true and disregarding legal conclusions. Then, we determine whether the facts alleged, if proven, show that the plaintiff has a plausible claim for relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

All well-pleaded allegations of the complaint must be accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences must be drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).

Additionally, a *pro se* plaintiff's pleadings must be considered deferentially, affording her the benefit of the doubt where one exists. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)). With these standards in mind, we shall accept as true the facts as they appear in McMillan's amended complaint and draw all possible inferences from these facts in her favor.

**Due Process Claims**

McMillan alleges the City of Norristown and the CYS defendants violated her Fifth and Fourteenth Amendment due process rights by failing to intervene in Berry's alleged abuse and abduction of her grandchildren.[32] She also claims they did not adhere to Pennsylvania's notice and hearing requirements when a protective order was issued against her, violating her due process rights.[33]

Because the Fifth Amendment only applies to actions of the federal government, we dismiss the Fifth Amendment claim. *B & G Const. Co. v. Dir., Office of Workers' Comp. Programs*, 662 F.3d 233, 246 n.14 (3d Cir. 2011). Because her due process claims are also brought under the Fourteenth Amendment, we shall analyze them.

*Failure to Intervene*

A state's failure to protect an individual from private violence does not constitute a Fourteenth Amendment due process violation. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 197 (1989); *Morrow v. Balaski*, 719 F.3d 160, 166 (3d Cir. 2013), *as amended* June 14, 2013. The due process clause does not impose a duty on the state to provide the public with protective services. *DeShaney*, 489 U.S. at 196. In short, it does not require the state to protect the life, liberty, and property of citizens against private individuals. *Id.* at 195.

In *DeShaney v. Winnebago County Department of Social Services*, a case analogous to this, the Supreme Court determined there was no Fourteenth Amendment due process violation where a county's department of social services allegedly failed to

---

[32] *Id.* ¶¶ 44–45, 57 at ECF 18–19, 29.

[33] *Id.* ¶¶ 36, 46–48, 59–61 at ECF 11, 19–24, 30–32.

8

protect and remove from custody a young boy who was repeatedly abused by his father. *Id.* at 192–97. McMillan lodges a similar claim, alleging the City of Norristown and the CYS defendants violated her due process rights by not "act[ing] or interven[ing] in the continued beatings of the children and [their] safe return[.]"[34] Because the Fourteenth Amendment does not mandate protective state action, the defendants' alleged failures to stop any purported abuse does not constitute a due process violation. Thus, we conclude that McMillan has not stated a Fourteenth Amendment claim for failure to intervene.[35]

*Failure to Provide Notice or a Hearing*

Due process is implicated when the state intrudes on a protected interest. *B.S. v. Somerset Cty.*, 704 F. 3d 250, 271 (3d Cir. 2013). Thus, as a threshold matter, we must determine whether McMillan, a custodial grandparent, has an interest entitled to constitutional protection under the Fourteenth Amendment.

Parents have a fundamental liberty interest in the custody, care, and management of their children. *Id.*; *Miller v. City of Philadelphia*, 174 F.3d 368, 374 (3d Cir. 1999). Whether that liberty interest extends to grandparents has not been addressed by the Third Circuit.

In this case, it is not necessary to resolve the issue of a grandparent's liberty interest. Assuming that McMillan has a protected interest, she still does not sufficiently allege a due process violation. She claims Berry obtained a "protective custody order"

---

[34] *Id.* ¶ 57 at ECF 29.

[35] The "special relationship" exception would not apply because the state did not have the type of relationship creating an affirmative duty. As *DeShaney* indicated, a special relationship with the state only exists where it has affirmatively acted to restrain an individual's freedom, such as through incarceration or institutionalization. 489 U.S. at 200. Neither is applicable here.

9

without her having had notice and an opportunity to be heard. She does not allege that any of the defendants, let alone the CYS defendants, initiated or participated in the hearing resulting in the "supposed order."

None of the defendants removed the grandchildren from McMillan. She voluntarily allowed them to go with Berry, who refused to return them. Consequently, the defendants cannot be liable for their removal. McMillan did not bring a custody action in the state court.

Though McMillan names the City of Norristown as a defendant, she has not alleged any facts implicating it in unlawful conduct.[36] Her amended complaint is devoid of any facts that would give rise to any duty on the part of the City of Norristown or any acts that could amount to a constitutional violation. She places the blame on Children and Youth Services.[37] She has not stated a procedural due process claim against the City of Norristown.

An individual must be given an opportunity to be heard "at a meaningful time and in a meaningful manner" before the government intrudes on a parent's liberty interest in the custody, care, and management of his or her children. *Somerset Cty.*, 704 F.3d at 271. "[I]t is axiomatic that at least some process is required when the state seeks to alter, terminate, or suspend a parent's right to the custody of her minor children." *Id.* (citations and bracket omitted).

Pennsylvania requires an individual who takes a child into protective custody to notify the parent, guardian, or custodian of the child's whereabouts and reasons why the

---

[36] *See* Am. Compl. ¶¶ 59–61 at ECF 30–33.

[37] *Id.* ¶ 59 at ECF 31; *see also, e.g., id.* ¶¶ 60–61 at ECF 31–33 (discussing DCCYS' failure to adhere to child protective laws requiring some form of notice).

child was taken into protective custody within 24 hours. 23 PA. CONS. STAT. ANN. § 6315(c). Within 48 hours, a county agency must meet with members of the family to determine placement of the child. *Id.* § 6315(f). An informal hearing must also be scheduled within 72 hours. *Id.* § 6315(d); 42 PA. CONS. STAT. ANN. § 6332(a).

The failure to follow state mandated procedures does not necessarily equate to a constitutional due process violation. *See Somerset Cty.*, 704 F.3d at 273 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)); *Brown v. Daniels*, 290 F. App'x 467, 471 (3d Cir. 2008). The question of "what process is due" is governed by federal, not state, law. *Dennis v. Dejong*, 557 F. App'x 112, 118 (3d Cir. 2014); *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 150 n.4 (3d Cir. 2005).

Parents may be deprived of custody through *ex parte* child custody proceedings as long as a prompt post-deprivation hearing is held. *Dejong*, 557 F. App'x at 117 (citing *Miller*, 174 F.3d at 372 n.4). Once the state forcibly removes the child, due process requires the parent "to be promptly heard," regardless of whether state law independently imposes that obligation. *Somerset Cty.*, 704 F.3d at 273; *D.M. v. Cty. of Berks*, 929 F. Supp. 2d 390, 398 (E.D. Pa. 2013). While there is no "bright-line rule" to determine whether a post-deprivation hearing is "prompt," delays are usually measured in "hours and days, as opposed to weeks." *Brown*, 128 Fed. App'x at 915.

McMillan alleges DCCYS assisted Berry in obtaining a protective custody order without notifying her of the proceedings or providing her with a post-deprivation

hearing.[38] She claims she only learned of the protective order on April 20, 2018 after her attorney spoke with Chester police.[39]

According to the complaint, even though they threatened to do so, the CYS defendants did not remove the children from McMillan's custody. Consequently, she was not entitled to a post-deprivation hearing. In any event, McMillan's due process claim fails because there was no harm. She acknowledges that she regained custody of her grandchildren on the day of a custody hearing at which Berry failed to appear.[40] Although there may have been a delay in her regaining custody, McMillan suffered no harm. Therefore, she has not stated a cause of action for a violation of a Fourteenth Amendment right to due process.

### Interference with Integral Relationship Claims

McMillan claims violations of the First and Fourteenth Amendment interference with the integral relationship clause.[41] But, neither contains an "integral relationship clause." Rather, the Fourteenth Amendment prohibits state interference in familial relationships without adherence to procedural and substantive due process requirements. *Smith v. N.J. Div. of Child Prot. & Permanency*, 723 F. App'x 119, 122 (3d Cir. 2018) (citing *Croft v. Westmoreland Cty. Children & Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997)). The First Amendment also protects a person's right to enter into and maintain familial relationships from state interference. *Pi Lambda Phi*

---

[38] *Id.* ¶¶ 59–61 at ECF 31–33; *see id.* ¶¶ 49, 54 at ECF 27–28 (indicating Berry made the abuse allegations against McMillan to DCCYS and he possessed the protective order "through [DCCYS.]").

[39] *Id.* ¶ 36 at ECF 11.

[40] *Id.* ¶ 65 at ECF 35.

[41] *Id.* ¶¶ 45, 57, 59 at ECF 19, 29–31.

*Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435, 441 (3d Cir. 2000), *as amended* Nov. 29, 2000.[42]

McMillan's Fourteenth Amendment interference claim rests on the same allegations as her due process claims. She alleges the City of Norristown and the CYS defendants' failures to intervene in her grandchildren's abuse or notify her of the protective custody order interfered with her grandparental relationship with J.M.#1 and J.M.#2.[43] Because we have already addressed the merits of those claims under due process, we do not do so again here.[44]

McMillan does not allege the basis of her First Amendment interference claim. She fails to indicate in which ways the defendants interfered with her First Amendment right to maintain her familial relationship. For this reason, we must dismiss her First Amendment claim for interference in familial relationships.

**Equal Protection Claims**

Finally, McMillan claims the City of Norristown and CYS defendants deprived her of "Equal Protection of Law" under the Eighth and Fourteenth Amendment equal

---

[42] Courts do not agree whether intimate association claims are grounded in the First or Fourteenth Amendment, or both. *Compare Clayworth v. Luzerne Cty., Pa.*, 513 F. App'x 134, 137 (3d Cir. 2013) (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–20 (1984)) (grounding intimate association claim by a father who sought custody of his child in the Fourteenth, not First, Amendment) *and Schlarp v. Dern*, 610 F. Supp. 2d 450, 462 n.7 (W.D. Pa. 2009) (characterizing the right of intimate association as a substantive due process right), *with Gardner v. Barry*, Civ. A. No. 10-0527, 2010 WL 4853885, at *5 n.5 (M.D. Pa. Nov. 23, 2010) (indicating the majority of circuits, including the Third Circuit, finds a right to intimate association protected by both the First and Fourteenth Amendments).

[43] Am. Compl. ¶¶ 57–59 at ECF 29–31.

[44] Fourteenth Amendment "familial integrity" rests on due process principles and implicates a parent's liberty interest in the care, custody, and management of his or her children. *See Somerset Cty.*, 704 F.3d at 272–73; *cf. Meenan v. Harrison*, 264 F. App'x 146, 149 (3d Cir. 2008) (citing *DeShaney*, 489 U.S. at 196) (finding a failure to properly investigate illegal actions by a teacher did not amount to governmental interference with a parental relationship because the due process clause confers no affirmative right to governmental aid).

protection clause.[45] Because the Eighth Amendment does not contain an equal protection clause, we dismiss it and analyze McMillan's equal protection claims under the Fourteenth Amendment.[46]

To sustain a § 1983 claim for denial of equal protection under the Fourteenth Amendment, McMillan must show that she received different treatment from that received by other individuals similarly situated. *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009). She must demonstrate there was purposeful discrimination. *Id.*

Nowhere in McMillan's complaint does she allege that the City of Norristown or the CYS defendants purposely discriminated against her. It is devoid of any facts suggesting she was treated differently than other grandparents. Therefore, McMillan has not stated a claim for equal protection violations against them.

### Section 1983 Claim

For municipal liability to attach, a plaintiff must demonstrate a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. at 385 (1989). The necessary causal link is shown where the municipality promulgates a policy statement and the injurious act occurs as a result of an implementation of that policy; the policymaker himself violates federal law; or the policymaker is deliberately indifferent to the need for action to correct an inadequate

---

[45] Am. Compl. ¶¶ 44–45, 56 at ECF 18–19, 28.

[46] McMillan alleges "[t]he Defendant's" actions were contrary to "their oaths and public offices" in violation of the Fourteenth Amendment equal protection clause. Am. Compl. ¶ 56 at ECF 28. Based on the complaint, it is not clear whether McMillan pleads this violation only against DCCYS, which is referenced in the preceding paragraph, or all defendants.

practice that is likely to result in a constitutional violation and fails to act. *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 249–50 (3d Cir. 2007).

A county agency may be held liable under § 1983 for injuries inflicted by its agents or employees only if the injuries were the result of a governmental policy or custom. *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Santiago v. Warminster Twp.,* 629 F.3d 121, 135 (3d Cir. 2010). A governmental policy or custom can be established by showing either that the decisionmaker possessing final authority to establish a municipal policy did so by issuing an official statement of policy or that a governmental custom developed when the official acquiesced to a course of conduct such that it operated as law. *Jiminez*, 503 F.3d at 250.

McMillan has not alleged a constitutional violation by the City of Norristown or the CYS defendants. She has only stated conclusions without any factual support. Hence, she cannot establish liability against them under § 1983. *City of Canton*, 489 U.S. at 385.

**Conclusion**

Construing the amended complaint most liberally and drawing all reasonable inferences in McMillan's favor, we conclude she has not stated a plausible claim for relief against any of the defendants. McMillan has failed to allege constitutional harm or a policy or custom by the City of Norristown. McMillan has also failed to state claims against the CYS defendants for a constitutional violation. Nor can she cure the deficiencies of her amended complaint. Therefore, we shall dismiss her amended complaint without leave to amend a second time.